IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LOLA M. SMITH, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   NO. 1:20-cv-00333-RAH-SRW |
| | ) |
| RYAN D. MCCARTHY, | ) |
| Secretary, U.S Department of the Army, | ) |
| | ) |
|    Defendant. | ) |

**REPORT AND RECOMMENDATION**[1]

**I.    Introduction**

On May 18, 2020, *pro se* Plaintiff Lola Smith, a former employee with the United States Army, filed this action against Defendant Ryan McCarthy in his capacity as the Secretary of the Army. (Doc. 1). Plaintiff alleges that Defendant discriminated against her in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq*. *Id*.[2] The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343.

---

[1] On May 26, 2020, United States District Judge R. Austin Huffaker, Jr., referred this action to the undersigned for decision or recommendation on all pretrial matters pursuant to 28 U.S.C. § 636. (Doc. No. 3).

[2] Plaintiff originally filed this action pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*. (the "ADA"). However, the ADA explicitly excludes the United States from its definition as a "covered entity." *See* 42 U.S.C. § 12111(2), (5)(B)(i); *Webb v. Donley*, 347 F. App'x 443, 445 n.1 (11th Cir. 2009) ("[B]ecause [plaintiff] was a federal employee, she was not covered under the ADA. Nevertheless, she would have been covered under the Rehabilitation Act, which is governed by the same standards as the ADA.") (citation omitted); *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) ("The Rehabilitation Act, not the Americans with Disabilities Act (ADA), constitutes the exclusive remedy for a federal employee alleging disability-based discrimination."). Thus, the proper statute under which Plaintiff, as a federal employee, can raise her disability-based discrimination claim is the Rehabilitation Act. Given Plaintiff's *pro se* status, and the fact that she checked the box on a form complaint that reflected that she was asserting her disability-related claims pursuant to the ADA, the court construes Plaintiff's claim as one brought under the Rehabilitation Act.

Before the court is Defendant's motion to dismiss (Doc. 12), which contends that Plaintiff's complaint should be dismissed because Plaintiff failed to timely exhaust her administrative remedies and because she failed to allege any facts plausibly showing either that she suffered a disability that substantially limited a major life activity or that she was not accommodated and forced to retire because of a disability. (Doc. 13). Plaintiff filed a response (Doc. 14), to which Defendant filed a reply (Doc. 16), and Plaintiff filed a sur-reply (Doc. 17).

For the reasons set forth below, the court concludes that Defendant's motion is due to be granted and that this action should be dismissed with prejudice.

## II.    Legal Standard-Dismissal for Failure to State a Claim Under Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570 (2007). The standard for a motion to dismiss under Rule 12(b)(6) was explained in *Twombly,* and refined in *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

*Iqbal,* 556 U.S. at 678–79 (citations and internal edits omitted).

The *Twombly-Iqbal* two-step analysis begins "by identifying the allegations in the complaint that are not entitled to the assumption of truth" because they are conclusory. *Id.* at 680;

*Mamani v. Berzain,* 654 F. 3d 1148, 1153 (11th Cir. 2011) ("Following the Supreme Court's approach in *Iqbal,* we begin by identifying conclusory allegations in the Complaint."). After conclusory statements are set aside, the *Twombly-Iqbal* analysis requires the Court to assume the veracity of well-pleaded factual allegations, and then to determine whether they "possess enough heft to set forth 'a plausible entitlement to relief.'" *Mack v. City of High Springs,* 486 F. App'x 3, 6 (11th Cir. 2012) (citation omitted.) "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' … that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted). Establishing facial plausibility, however, requires more than stating facts that establish mere possibility. *Mamani,* 654 F. 3d at 1156 ("The possibility that – *if* even a possibility has been alleged effectively – these defendants acted unlawfully is not enough for a plausible claim.") (emphasis in original). Plaintiffs are required to "allege more by way of factual content to nudge [their] claim[s] … across the line from conceivable to plausible." *Iqbal,* 556 U.S. at 683 (internal editing and citation omitted.).

    In ruling on a 12(b)(6) motion, a court generally may consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (A "court may consider a document attached to a motion to dismiss . . . if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged. . . . [A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement[.]") (citation omitted). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true

and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The court need not, however, accept legal conclusions couched in the form of factual allegations. *See Diverse Power, Inc. v. City of LaGrange, Georgia*, 934 F.3d 1270, 1273 (11th Cir. 2019) (citing *Twombly*, 550 U.S. at 555).

While *pro se* complaints are liberally construed and held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "that does not give 'a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.'" *Woodroffe v. Fla. Dep't of Fin. Servs.*, 774 F. App'x 553, 554 (11th Cir. 2019) (citation omitted).

### III.   **Factual Background**[3]

Plaintiff worked as a civilian Personnel Operations Specialist, GS-301-09, for the United States Army Medical Command ("MEDCOM") at Lyster Army Health Clinic (Lyster), Fort Rucker, Alabama, from August 2010 until her retirement, effective September 30, 2012. (Doc. 1, at 5; Doc. 1-1, at 6-8, 16). On May 8, 2012, Plaintiff filed a workers' compensation claim for "abdominal pain." (Doc. 1, at 5). On May 9, 2012, Plaintiff made an initial request for Voluntary

---

[3] These facts are gleaned exclusively from the allegations in the complaint and any documents that are attached thereto or that are referenced in the complaint and central to Plaintiff's claim. They are the operative facts for the purposes of the court's ruling on the motion to dismiss.

Early Retirement[4] ("VER") for health reasons. *Id*. Plaintiff alleges that she withdrew her first retirement request because the Army "was not going to give her the VSIP." *Id*.[5]

On June 21, 2012, Plaintiff filed a second workers' compensation claim for a "central retinal vein occlusion" ("CRVO") and was placed on sick leave from June 21, 2012 to August 1, 2012. *Id*. According to Plaintiff, she was diagnosed with CRVO and elevated blood pressure. *Id*. On August 1, 2012, Plaintiff requested leave under the Family Medical Leave Act ("FMLA"). *Id*. While on leave, Defendant notified Plaintiff that her VER application had been approved. *Id*. Plaintiff alleges that she did not know that Defendant "had submitted the application without her approval." *Id*. On August 10, 2012, Plaintiff informed Defendant that she was not going to retire. *Id*. At Defendant's direction, Plaintiff requested that the Civilian Personnel Advisory Center ("CPAC") withdraw the second retirement application, which it did on August 10, 2012. *Id*.

Plaintiff alleges that Defendant then requested medical documentation for her absence from August 1-10, 2012. *Id*. Plaintiff presented a work excuse for her absence from August 13, 2012 to August 15, 2012, but initially was unable to present medical documentation excusing her absence from work for the period of August 1, 2012 to August 10, 2012. *Id*.; Doc. 14-1, at 2. As a result, Plaintiff was charged for being Absent Without Leave ("AWOL"). *Id*., Doc. 14-1, at 3. However,

---

[4] Voluntary Early Retirement Authority (VERA) allows agencies that are undergoing substantial restructuring, reshaping, downsizing, transfer of function, or reorganization to lower the age and service requirements temporarily in order to increase the number of employees who are eligible for retirement. https://www.opm.gov/policy-data-oversight/workforce-restructuring/voluntary-early-retirement-authority/; Doc. 14-1, at 8.

[5] The Voluntary Separation Incentive Payment ("VSIP") Authority, also known as buyout authority, allows agencies that are downsizing or restructuring to offer employees lump-sum payments up to $25,000 as an incentive to separate voluntarily. When authorized by the Office of Personnel Management (OPM), an agency may offer VSIP to employees who are in surplus positions or have skills that are no longer needed in the workforce who volunteer to separate by resignation, optional retirement, or by voluntary early retirement, if approved. https://www.opm.gov/policy-data-oversight/workforce-restructuring/voluntary-separation-incentive-payments/; Doc. 14-1, at 8.

after Plaintiff provided the requested medical documentation, the AWOL charge was rescinded. (Doc. 1, at 5).

Plaintiff alleges that she "continued to have health issues" and, on September 19, 2012, she "requested from MEDCOM to take early retirement." *Id*. MEDCOM granted Plaintiff's request, but advised her that she needed to be off the books by September 30, 2012, otherwise Plaintiff would have to wait until the next allocation cycle in fiscal year 2013. *Id*.; Doc. 1-1, at 11. On September 26, 2012, Plaintiff notified her Human Resource (HR) representative, Tonya Barkley, that due to a medical reason she had considered accepting early retirement, but because of financial concerns for her family she was withdrawing her request for early retirement. *Id*.; Doc. 1-1, at 12. Plaintiff alleges that she also asked to work in an area where she did not have to work on a computer all day, but was told that such a position was not available. (doc. 1, at 5). Attached to Plaintiff's complaint is Barkley's "memorandum for record," which states as follows:

> 1. Ms. Smith called me the morning of 26 September to inform me that she will be pulling her VERA/ VSIP packet (for the 3rd time) and that she will let COL Laterza know of her decision. Since Ms. Smith had decided to withdraw her decision NOT to retire and move forward with VERA/SIP just 7 days ago--after the MEDCOM deadline; I asked Ms. Smith was she sure this time and asked what led to her sudden change of mind. She replied that it was not enough money and she could not afford to retire financially. . . .
>
> 2. Late morning, COL Laterza informed me that Ms. Smith talked to him and asked if I was aware of a document Ms. Smith signed stating that she would not withdraw her decision. I answered, "no" and he explained to me that it will be Supervisor's decision to rescind an employee's retirement paperwork once the document is signed. He stated he would support me with whatever decision I made.
>
> 3. I made an appointment with Ms. Smith to speak with her face to face and informed her that based on the Memorandum of Application Decision she signed on 19 September 2012 for VERA/ VS1P, her retirement will stand and her date of separation will be 30 September 2012. She responded by saying "I'm going to talk to COL Laterza about this!"

(Doc. 1-1, at 10).

By letter dated September 30, 2012, the Army Benefits Center-Civilians ("ABC-C") notified Plaintiff that her retirement application was processed and forwarded to Defense Finance

and Service ("DFAS"). *Id*. at 6. Plaintiff alleges that she received the notice on October 6, 2012, and, on October 18, 2012, she received the retirement incentive payment. (Doc. 1, at 5). On or about October 23, 2012, Plaintiff received a letter dated September 28, 2012, from the Office of Personnel Management ("OPM"), stating that she was not eligible for voluntary early retirement because she only had 19 years, 9 months and 3 days creditable civilian service, but needed 20 years to retire. *Id*.; Doc. 1-1, at 7. According to Plaintiff, OPM advised her that she had 20 years and 19 days creditable service that could be used toward establishing retirement eligibility if she paid a deposit. *Id*. OPM advised that if Plaintiff did not make the deposits she would be ineligible for retirement and, as a result of not paying the required deposits, she would have no reinstatement rights and would not be entitled to be restored to her former or any other equivalent position. *Id*.; Doc. 1-1, at 7-8. Plaintiff authorized OPM to withdraw the deposit from her retirement payment, and it did so. *Id*.; Doc. 1-1, at 8-9.

Plaintiff alleges that she was not eligible to retire on September 30, 2012, and that Defendant was aware of her disability and rushed through her retirement. (Doc. 1). Plaintiff also alleges that she could not retire under VERA/VSIP if she could apply for FERS disability retirement, but Defendant did not give her an opportunity to apply for FERS disability retirement. *Id*.

On January 25, 2013, the Social Security Administration denied Plaintiff's claim for disability benefits. (Doc. 17-1, at 1-2). On February 27, 2013, Plaintiff initiated contact with the Equal Employment Opportunity ("EEO") office and, on April 8, 2013, she filed a formal EEO complaint alleging that Defendant discriminated against her based upon her disability when she was denied a reasonable accommodation for her eye injury that occurred at work, resulting in her forced retirement. (Doc. 1, at 6; Doc. 13-1, at 2-3; Doc. 17-1, at 8).

## IV.     Analysis[6]

Defendant contends that Plaintiff did not timely exhaust her mandatory administrative remedies. The Rehabilitation Act "'prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability.'" *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008) (citation omitted); *see also* 29 U.S.C. § 794(a). "A plaintiff asserting a private right of action under the Rehabilitation Act must satisfy the exhaustion of administrative remedies requirement in the manner prescribed." *Gaillard v. Shinseki*, 349 F. App'x 391, 392 (11th Cir. 2009). Under the Rehabilitation Act, a federal employee is required to initiate administrative review of any alleged discriminatory conduct with the appropriate agency within 45 days of the alleged discriminatory act. *Id*. The regulations provide that:

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory

---

[6] When reviewing a Rule 12(b)(6) motion to dismiss for failure to exhaust administrative remedies, such as the pending motion, a court may consider, in addition to the allegations in the complaint, any documents attached to the plaintiff's complaint, the defendant's motion, and the plaintiff's response, such as administrative records from the plaintiff's EEO complaint, so long as they are central to the plaintiff's claims, they are not in dispute, and they are relevant to the issue of the plaintiff's exhaustion of administrative remedies. *See Tillery v. Dep't of Homeland Sec.*, 402 F. App'x 421, 425 (11th Cir. 2010) ("[I]n ruling on DHS's Rule 12(b) motion to dismiss based solely on exhaustion of administrative remedies and not on the merits of Tillery's claims, the district court did not err in considering evidence outside the pleadings or in making fact findings as to exhaustion."); *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) ("[T]he district court did not err in considering the exhibits attached to the [] motion to dismiss, including the Notification of Personnel Action and the [] EEOC right to sue letter, because they were central to the claims in Horne's complaint and were undisputed."); *Patterson v. WMW, Inc.*, No. 1:11-CV-3172, 2012 WL 3261290, at *4 (N.D. Ga. June 15, 2012), *report and recommendation adopted*, 2012 WL 3260619 (N.D. Ga. Aug. 8, 2012) ("The undersigned finds that in deciding Defendant's motion, the court may consider the documents attached to Plaintiff's response because they are administrative records; they are central to her claims; they are not in dispute; they are relevant to the issue of Plaintiff's exhaustion of administrative remedies; and the EEOC charge is referred to in Plaintiff's complaint."). Thus, on a Rule 12(b)(6) motion to dismiss for failure to exhaust administrative remedies, "'it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.'" *Tillery*, 402 F. App'x at 424 (quoting *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008)).

>or, in the case of personnel action, within 45 days of the effective date of the action.
>(2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a).

"Generally, when the claimant does not initiate contact within the 45-day charging period, the claim is barred for failure to exhaust administrative remedies." *Shiver*, 549 F.3d at 1344. "If the employee shows that he was not notified or otherwise aware of the time limits, then he may seek an extension of the 45 day period." *Gaillard*, 349 F. App'x at 392. "The EEO Commission ('EEOC') has held that 'in order to establish EEO counselor contact, an individual must contact an agency official logically connected to the EEO process and exhibit an intent to begin the EEO process.'" *Murphree v. Comm'r*, 644 F. App'x 962, 966 (11th Cir. 2016) (citation omitted).

Here, the record reflects that Plaintiff did not initiate contact with the EEO office until February 27, 2013. The adverse actions in this lawsuit – the alleged denial of her accommodation request and her "forced" retirement due to disability – occurred, at the latest, on September 30, 2012, the date her retirement became effective. *See Green v. Brennan*, 136 S. Ct. 1769, 1774 (2016) (addressing when the limitations period begins to run on a constructive discharge claim, that is, where an employee who was not fired, but resigns in the face of intolerable discrimination, the Supreme Court held that, "in such circumstances, the 'matter alleged to be discriminatory' includes the employee's resignation, and that the 45-day clock for a constructive discharge begins running only after the employee resigns."); *Sweeney v. U.S. Postal Serv.*, No. CV 08-4417 ARL, 2013 WL 5744490, at *13 (E.D.N.Y. Oct. 23, 2013) ("To the extent plaintiffs Bobb and Collura

9

claim they were forced to retire due to defendants' alleged discriminatory conduct, such claims would be for constructive discharge, a discrete act, which as discussed *supra* had to be, but was not, timely exhausted by contacting an EEO counselor within 45 days."). Plaintiff therefore had until November 14, 2012, (45 days from September 30, 2012) to initiate EEO contact concerning the discrete acts of discrimination. Because Plaintiff did not initiate EEO contact until February 27, 2013, 150 days from September 30, 2012, her EEO complaint was untimely.

"[T]he plaintiff bears the burden of pleading and proving any equitable reasons for failing to meet the 45-day time limit to contact the agency's EEO counselor." *McCants v. Glickman*, 180 F. Supp. 2d 35, 40 (D.D.C. 2001) (citing *Saltz v. Lehman*, 672 F.2d 207, 209 (D.C.Cir.1982)); *Howell v. Dep't of the Army*, 975 F. Supp. 1293, 1296 (M.D. Ala.), *aff'd sub nom. Howell v. Dep't of Army*, 130 F.3d 445 (11th Cir. 1997) ("Of course, 'A complaining party in a Title VII case bears the burden of providing the justification for application of equitable tolling principles.'") (quoting *Wilson v. Secretary, Department of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir.1995))); *Foster v. Gonzales*, 516 F. Supp.2d 17, 22 (D.D.C. 2007) ("The initial burden of establishing a plaintiff's failure to exhaust administrative remedies rests with the defendant; the plaintiff, however, has the burden of demonstrating that equitable tolling is warranted.") (citations omitted). Here, Plaintiff does not assert in her complaint, her response, or her sur-reply that she was unaware of the 45-day time limit. Plaintiff, however, maintains that she "filed each and every EEO claim on time. The first claim was processed February 27, 2013." (Doc. 14, at 5). Plaintiff also cites her subsequent appeal to the Merit Systems Protection Board ("MSPB") and other filings before the EEOC. *Id*. at 5-6. However, Plaintiff mistakenly equates her complying with certain deadlines following the filing of her EEO complaint as complying with the deadline for making initial EEO contact. Plaintiff was required to initiate contact with the EEO office within 45 days of the date of the discriminatory action or the effective date of the personnel action. 29 C.F.R. § 1614.105(a)(1). As

of September 30, 2012, Plaintiff knew or at least reasonably should have known of the alleged discriminatory conduct or personnel action. In fact, in her response, Plaintiff states:

> Plaintiff requested to rescind VERA and she also requested on September 26, 2012, to go on Leave without pay or be reassigned due to having eye pain. Plaintiff was denied the request with the statement from the agency "if you cannot work on the computer, we do not have anything available."
> The Army knew or should have known that the plaintiff was requesting reasonable accommodation when she requested to work in a position that would not require her to work on the computer all day and requested to go on LWOP or be reassigned.

(Doc. 14, at 4).

Plaintiff also maintains that on October 23, 2012 she received a letter, dated September 28, 2012, from the Army Benefit Center stating that she was ineligible to retire and that she had to pay the deposit to establish eligibility requirement for retirement or "lose everything that she worked for 19 years, 9 months and 3 days." *Id*. at 1-2. However, even if the court were to use October 23, 2012, as the date of the alleged adverse actions known by Plaintiff, Plaintiff's February 27, 2013 EEO contact would still be outside the 45-day deadline to initiate EEO contact.

Plaintiff further argues that she did not become aware of Defendant's discriminatory conduct until she received notification from the Social Security Administration on Jan 29, 2013, informing her that she did not qualify for disability under its rules. (Doc. 17, at 1). Plaintiff maintains that, as a result of this notification, she researched and became aware that she had been discriminated against because of a disability when she was denied reasonable accommodation after requesting to be placed on leave without pay ("LWOP") or to be reassigned to a position where she would not have to work on a computer all day due to her eye condition. *Id*. at 2. However, the court fails to see how the denial of Plaintiff's requested Social Security benefits is in any way related to Defendant's allegedly denying Plaintiff a reasonable accommodation and forcing her into retirement. The facts surrounding Plaintiff's claims under the Rehabilitation Act were known or should reasonably have been known to Plaintiff as of September 30, 2012, and nothing changed

from then to January 29, 2013, regarding those known facts. *See Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1025 (11th Cir. 1994) ("[A] limitations period does not start to run until the facts which would support a charge of discrimination are apparent or should be apparent to a person with a reasonably prudent regard for his rights. . . . It is not necessary for a plaintiff to know all the facts that support his claim in order to file a claim.") (citations and footnote omitted). Plaintiff fails to allege what new information concerning her discrimination claim she gleaned from the denial of her requested Social Security disability benefits. Accordingly, the court concludes that the facts giving rise to Plaintiff's claims were known or reasonably should have been known by Plaintiff by September 30, 2012; therefore, Plaintiff's claims are untimely and due to be dismissed.[7]

## V.     Conclusion

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that Defendant's motion to dismiss (Doc. 12) be **GRANTED** and that this action be **DISMISSED WITH PREJUDICE**.

It is ORDERED that the parties shall file any objections to the said Recommendation on or before March 18, 2021. Any objections filed must specifically identify the findings in the Magistrate Judge's recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the magistrate judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the

---

[7] Given its conclusion, the court does not reach Defendant's alternative arguments that Plaintiff's complaint should be dismissed for failure to allege sufficient facts to state plausible claims.

report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

    DONE, on this the 3rd day of March, 2021.

                                                 /s/ Susan Russ Walker
                                                 Susan Russ Walker
                                                 United States Magistrate Judge